Eric J. Neal, OSB No. 110268
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
eneal@letherlaw.com
P: (206) 467-5444/F: (206) 467-5544
*Counsel for Plaintiff American*
*Hallmark Insurance Company*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| AMERICAN HALLMARK INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>TOLL BROS., INC., a Pennsylvania corporation; TOLL WEST COAST LLC, a Delaware limited liability company; ANTHONY C. EDWARDS and JANE DOE EDWARDS, husband and wife and the marital community comprised thereof; and BDZE DEVELOPERS INC. d/b/a BDZE CONSTRUCTION,<br><br>Defendants. | No.  0:24-cv-00936<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff American Hallmark Insurance Company (hereinafter "Hallmark") submits the

following Complaint for Declaratory Relief pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

## I.    INTRODUCTION

1.1    This is an insurance coverage action seeking declaratory relief pursuant to 28

U.S.C. §§ 2201 and 2202. Hallmark seeks a determination that it does not owe a duty to defend

or indemnify BDZE Developers Inc. d/b/a BDZE Construction or Anthony Edwards and Jane Doe Edwards under the policies of insurance issued by Hallmark with respect to the claims against them in *Toll Bros. Inc. and Toll West Coast, LLC v. Anthony C. Edwards and Jane Doe Edwards, BDZE Developers Inc. d/b/a BDZE Construction*, U.S. District Court for the District of Oregon, case number 3:24-cv-00532-YY (the "Underlying Lawsuit").

## II.   PARTIES

2.1    Hallmark is a foreign insurer organized under the laws of the State of Texas with a principal place of business in the State of Texas.

2.2    Defendant Toll Bros., Inc. (hereinafter referred to collectively with Defendant Toll West Coast, LLC as "Toll") is a corporation organized under the laws of the State of Pennsylvania with a principal place of business in the State of Pennsylvania.

2.3    Defendant Toll West Coast, LLC (hereinafter referred to collectively with Defendant Toll Bros. Inc., as "Toll") is a limited liability company organized under the laws of the State of Delaware. Upon information and belief, all members of Toll West Coast, LLC are residents and citizens of the States of Pennsylvania and Oregon.

2.4    Upon information and belief, Defendants Anthony C. Edwards and Jane Doe Edwards (hereinafter collectively referred to as "Edwards") are husband and wife and owners of BDZE Developers, Inc. and BDZE Construction and are residents and citizens of the State of Oregon. At all times material herein, defendant Anthony Edwards was the president of BDZE.

2.5    BDZE Developers, Inc. was a corporation duly organized under the laws of the State of Oregon. BDZE Developers, Inc with a principal place of business in Beaverton, Oregon. was administratively dissolved on February 8, 2024.

2.6    BDZE Construction is a business duly organized and existing under the laws of

the State of Oregon with a principal place of business in Beaverton, Oregon.

2.7    BDZE Developers, Inc. and BDZE Construction are hereinafter collectively referred to as "BDZE."

### III.    JURISDICTION AND VENUE

3.1    This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and diversity amongst the parties is complete.

3.2    The Court has jurisdiction over this Declaratory Judgment action pursuant to 28 U.S.C. § 2201 because there is an actual and justiciable controversy between the parties with respect to the existence of insurance coverage under the policies of insurance issued by Hallmark. A judicial determination and declaration of the rights and obligations of the parties is necessary and appropriate at this time because Hallmark has no adequate remedy at law which will resolve the current controversy.

3.3    Venue is proper with this Court pursuant to 28 U.S.C. § 1391 and local court rules as this case involves claims for insurance coverage stemming from an alleged loss occurring in Oregon, the insurance policies were issued in Oregon to an Oregon business entity, and the Underlying Lawsuit is filed in the U.S. District Court for the State of Oregon.

### IV.    FACTUAL BACKGROUND

**A.    Background**

4.1    Hallmark reasserts paragraphs 1.1-3.3 as though fully set forth herein.

4.2    On or about August 18, 2021, Toll and BDZE entered into an agreement (the "Contract") for BDZE to provide a variety of site development services for Toll for a large residential subdivision (the "Project"), with work to be completed by late September 2022.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 / F: (206) 467-5544

4.3     The Project was located in Washington County, Oregon.

4.4     BDZE allegedly breached its obligations under the Contract, which allegedly included failure to complete its work and fraudulently misappropriating funds that Toll paid to BDZE on behalf of BDZE's subcontractors and/or suppliers.

4.5     As a result, it is alleged that Toll was forced to pay replacement contractors to remedy and complete BDZE's work. It is also alleged that Toll was also forced to defend against, settle, and otherwise resolve several liens and claims from BDZE's unpaid subcontractors and/or suppliers who worked on the Project.

**B.    The Underlying Arbitration**

4.6     In late 2023, BDZE and Toll entered into binding arbitration as required by the Contract. On September 7, 2023, BDZE and Toll entered into a stipulation whereby any claims that Toll had against Edwards were reserved, not waived, and were to be pursued outside of arbitration.

4.7     Hallmark did not receive notice of this dispute or the arbitration proceedings from Edwards, BDZE, or otherwise.

4.8     The Arbitrator held an evidentiary hearing, at which defendant Anthony Edwards testified.

4.9     On or about November 30, 2023, the arbitrator issued a Final Award. In the Final Award, the Arbitrator found the following with respect to Anthony Edwards' alleged misappropriation of Toll's funds:

> Unbeknownst to Toll, prior to October 8, BDZE was in substantial financial distress as it was not fully paying a substantial number of its subcontractors and vendors from progress payments received from Toll.

***

COMPLAINT FOR DECLARATORY RELIEF– 4

Mr. Edwards candidly testified at the evidentiary hearing that BDZE was not fully paying all of its subcontractors and suppliers during the course of the project. Rather, BDZE was making partial payments, based on the relative ageing of its accounts payable and further, some payments were for work performed by the same subcontractors and suppliers on other unrelated projects.

***

The failure by BDZE to fully pay its subcontractors and suppliers from progress payments for work performed during the pay period was an act of default under the Contract. The attestations by BDZE of full payment were false statements and thus a material breach of the Contract. Pursuant to Section 8 of the Contract, Toll was fully within its rights to resolve all outstanding lien claims and BDZE is obligated to reimburse Toll for all costs, damages and attorneys' fees resulting from these subcontractor and supplier claims and liens.

4.10    The Arbitrator further found in the Final Award the following with respect to the damages Toll incurred as a result of BDZE's actions:

Costs to Complete and Correct BDZE's Work:
Corrective work by NW Earthworks: $1,328,844.00
Corrective work by Taggert: $532,111.00
Additional Winter Treatments: $375,000.00
Added costs for soil export: $559,912.00
NW Earthworks completion subcontract: $7,189,586.00

NW Earthworks CO's – Walls $481,000.00
Bent LLC – Culvert Work $177,800.00

**Subtotal: $10,644,253.00**
**Less Balance on**
**BDZE Subcontract at Termination: $4,502,259.00**
**Less Credit due BDZE: $232,515.00**

**Total due Toll for Costs to Complete BDZE Contract: $5,909,479.00**

To Resolve the BDZE subcontractor and supplier claims and liens Toll was required to pay: $1,424,039.78

Accordingly, Toll is entitled to an Award against BDZE in the amount of $7,333,518.78 for BDZE's breaches of contract. The amounts claimed by Toll are fully supported by the Toll business

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 / F: (206) 467-5444

records which are attached to the Stambaugh declarations. Further, at the evidentiary hearing, Mr. Edwards was asked on cross-examination if he took any exception to the amounts paid by Toll to subcontractors and suppliers or the amounts paid by Toll to complete the BDZE scope of Work. Mr. Edwards responded that BDZE did not contest the amounts claimed by Toll.

4.11    The Arbitrator also awarded Toll $50,000.00 in attorneys' fees and litigation costs and $28,652.50 for arbitration fees and costs. The total award to Toll was $7,412,171.28, plus interest at 8.5% per annum.

**C.    The Underlying Lawsuit**

4.12    On March 28, 2024, Toll filed the Underlying Lawsuit against the Edwards and BDZE.

4.13    The Underlying Lawsuit alleges the information contained in paragraphs 4.2-4.11 herein.

4.14    The Underlying Lawsuit seeks to pierce the corporate veil of BDZE in order to hold the Edwards personally liable for the Final Award given in the underlying arbitration described in paragraphs 4.9-4.11 herein.

4.15    The Underlying Lawsuit further alleges that, at all times material, BDZE was under the control of Edwards. Edwards allegedly exercised full and final control of BDZE and was ultimately responsible for the management and business decisions of BDZE.

4.16    The Underlying Lawsuit alleges that Edwards improperly controlled BDZE in one or more of the following particulars:

> A.  Failing to capitalize BDZE with sufficient assets to cover its reasonably foreseeable liabilities;
>
> B.  Based on Toll's information and belief, failing to observe proper

COMPLAINT FOR DECLARATORY RELIEF– 6

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 / F: (206) 467-5544

formalities between defendants Edwards and BDZE; and

C.   Based on Toll's information and belief, co-mingling the assets and liabilities of BDZE with defendants Edwards' own assets, including prioritizing payments to vendors, subcontractors, and/or suppliers whom Edwards had personal liability or exposure to and doing so to the detriment of Toll for the payments Toll was making to BDZE for work performed on the Project.

4.17    The Underlying Lawsuit further alleges that the conduct of Edwards, including misallocation of funds as found by the Arbitrator against Edwards, has and will continue to cause Toll to be unable to obtain an adequate remedy against BDZE in Toll's judgment against it. The Underlying Lawsuit alleges that if the corporate veil is not pierced, Toll will have no recourse and Edwards will reap the benefits of his fraudulent conduct. Such a result, it is alleged, will create injustice.

4.18    The Underlying Lawsuit alleges that Edwards is not entitled to the protections afforded to those corporate shareholders who observe corporate formalities, adequately capitalize their companies, and do not engage in fraudulent conduct.

4.19    The Underlying Lawsuit alleges that defendants Anthony and Jane Doe Edwards and BDZE are liable, jointly and severally, to Toll for the obligations of BDZE as set forth above.

**D.    Hallmark's Claims Handling and Investigation**

4.20    BDZE and/or Edwards reported the Underlying Lawsuit to Hallmark on or about April 5, 2024, after the underlying arbitration was completed and after the Underlying Lawsuit was filed. This was the first notice of the dispute between BDZE and Toll described above.

4.21    Hallmark was prejudiced by this late notice as it was unable to participate in the

COMPLAINT FOR DECLARATORY RELIEF– 7

underlying arbitration in any respect.

4.22    Hallmark timely issued a reservation of rights letter to BDZE and Edwards on April 30, 2024, following notice of the Underlying Lawsuit.

4.23    Additionally, Hallmark assigned defense counsel to BDZE and Edwards for the defense of the Underlying Lawsuit.

**E.      The Hallmark Policy**

4.24    Hallmark issued three consecutive commercial general liability policies, policy numbers 44-CL-009003804-0, 44-CL-009003804-01, 44-CL-009003804-02, effective between September 1, 2020 and September 1, 2021, September 1, 2021 and September 1, 2022, and September 1, 2022 and September 1, 2023 (the "Subject Policies") to the named insured BDZE Developers Inc d/b/a BDZE Construction.

4.25    The Subject Policies each have a $1,000,000 per occurrence limit, $2,000,000 general aggregate limit, and a $2,000,000 products/completed operations aggregate limit under the Commercial General Liability (CGL) coverage.

4.26    The Subject Policies also include Commercial General Liability Coverage under the Commercial Umbrella Liability Occurrence Coverage Form which provides a combined singled limit of $4,000,000.

4.27    With respect to Section I – Coverage A Bodily Injury and Property Damage Liability, the Subject Policies provide as follows:

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.      Insuring Agreement**
>
>   **a.      We will pay those sums that the insured becomes**

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 / F: (206) 467-5544

legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle and claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 / F: (206) 467-5544

"property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**    Receives a written or verbal demand or claim for damages because of "bodily injury" or "property damage"; or

**(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.**    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

CG 00 01 12 07.

4.28    The Subject Policies contain the following applicable definitions:

**SECTION V – DEFINITIONS**

…

**3.**    "Bodily injury" means bodily injury, sickness or disease

COMPLAINT FOR DECLARATORY RELIEF– 10

sustained by a person, including death resulting from any of these at any time.

…

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

16.    "Products-completed operations hazard":

a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)    Products that are still in your physical possession; or

(2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)    When all of the work called for in your contract has been completed.

(b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.    Does not include "bodily injury" or "property damage" arising out of:

COMPLAINT FOR DECLARATORY RELIEF– 11

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit

COMPLAINT FOR DECLARATORY RELIEF– 12

or does submit with our consent; or

**b.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

…

**22.**    "Your work":

**a.**    Means:

**(1)**    Work or operations performed by you or on your behalf; and

**(2)**    Materials, parts or equipment furnished in connection with such work or operations.

**b.**    Includes:

**(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)**    The providing of or failure to provide warnings or instructions.

CG 00 01 12 07.

4.29    The Subject Policies contain the following exclusion:

**2.**    **Exclusions**

This insurance does not apply to:

**a.**    **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

…

**j.**    **Damage To Property**

"Property damage" to:

**(1)**    Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)**    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)**    Property loaned to you;

**(4)**    Personal property in the care, custody or control of the insured;

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

…

**l.**    **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

CG 00 01 12 07.

COMPLAINT FOR DECLARATORY RELIEF– 14

4.30    The Subject Policies contain the following endorsement which excludes coverage

for certain multi-unit residential construction operations:

> **EXCLUSION – MULTI-UNIT RESIDENTIAL CONSTRUCTION**
>
> This endorsement modifies insurance provided under the following:
>
> > **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
> > **OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
> > **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
>
> This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of:
>
> 1.    "Your work" involving the exterior of any "multi-unit residential project" including the construction, maintenance, remodeling or repair, of any new or existing structure. This includes but is not limited to roofing, siding, guttering, caulking, sealing, framing, foundation work, carpentry, door/window repair or installation, and masonry work.
> 2.    Any of "your products" which will or have become part of the real property of any "multi-unit residential project."
>
> As respects the application of this exclusion to "bodily injury" and "property damage," this exclusion:
>
> 1.    Only applies to the "products-completed operations hazard."
> 2.    Does not apply to "your work" in connection with interior pre-construction, construction, post-construction, remodeling, maintenance or repair of any new or existing "multi-unit residential project" if the work is performed entirely within the confines of the inner walls of the building(s).
> 3.    Does not apply to "your work" involving the exterior of the structure in connection with any plumbing, heating and air conditioning or electrical work.

COMPLAINT FOR DECLARATORY RELIEF– 15

**4.** Does not apply to "your work" involving external land and site improvements such as retaining walls, landscaping, excavation, grading of land or soil compaction on the grounds of any "multi-unit residential project."

For the purposes of this endorsement, the following definitions are added:

**1.** "Multi-unit residential project" means a condominium, townhouse, apartment or similar structure, used for the purpose of residential occupancy, which has either:

**a.** More than four units in any one building; or
**b.** More than four, four-unit buildings at any one "development."

This does not include motels, hotels, nursing homes or assisted living facilities.

**2.** "Development" is defined as a building or group of buildings with the same ownership or constructed under a master plan regardless of the number of phases or length of time taken to complete construction.

…

GC 10 03 04 08.

4.31   The Subject Policies contain the following provisions regarding an insured's duties in the event of an occurrence, claim, or suit:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

…

**2.** **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

COMPLAINT FOR DECLARATORY RELIEF– 16

    **(2)**    The names and addresses of any injured persons and witnesses; and

    **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**    If a claim is made or "suit" is brought against any insured, you must:

    **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)**    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**    You and any other involved insured must:

    **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)**    Authorize us to obtain records and other information;

    **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

CG 00 01 12 07.

    4.32    The Subject Policies contain the following Commercial Umbrella Liability

Occurrence Coverage Form insuring agreement:

### COMMERCIAL UMBRELLA LIABILITY OCCURRENCE

COMPLAINT FOR DECLARATORY RELIEF– 17

**COVERAGE FORM**

…

**SECTION I – COVERAGES**

**Coverage A – Excess Liability Coverage**

1.      **Insuring Agreement**

      **a.**    We will pay those sums, in excess of the amount payable under the terms of any "underlying insurance," that the insured becomes legally obligated to pay as damages because of "injury" or damage to which this insurance applies, provided that the "underlying insurance" also applies, or would apply but for the exhaustion of its applicable limits of insurance. If, however, a Minimum Retention applies, as set forth in paragraph **3.** below, we will pay only those sums in excess of the Minimum Retention.

      **b.**    We will have the right to participate in the defense of claims or suits against the insured seeking damages because of "injury" or damage to which this insurance may apply. We will have a duty to defend such claims or "suits" when the applicable limit of insurance of the "underlying insurance" has been used up by payment of judgments, settlements and any cost or expense subject to such limit.

          This right or duty to defend is limited as set forth in **SECTION III – DEFENSE OF CLAIMS OR SUITS.**

      **c.**    The amount we will pay for damages and "defense expense" is limited as described in **SECTION IV – LIITS OF INSURANCE**. Damages includes prejudgment interest awarded against the insured.

      **d.**    This coverage is written with the understanding that all "underlying insurance" is written on an "occurrence" basis.

      **e.**    This insurance is subject to the same terms, conditions, agreements, exclusions, and definitions as the "underlying insurance," except:

          **1)**    We will have no obligation under this

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 / F: (206) 467-5544

insurance with respect to any claims or "suit" that is settled without our consent; and

**2)**    With respect to any provisions to the contrary contained in this insurance.

GC 70 21 11 87.

4.33    The Subject Policies contain the following extended liability coverage insuring agreement with regard to the Commercial Umbrella Liability Coverage Form:

**Coverage B – Extended Liability Coverage**

**1.    Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies. This insurance applies only to "injury" which occurs during the policy period. The "injury" must be caused by an "occurrence." This insurance applies only to "injury" which occurs in the "coverage territory."

**b.**    We have the right and duty to defend claims or "suits" against the insured seeking such damages and to pay for the "defense expense." This right and duty is limited as described in **SECTION III – DEFENSE OF CLAIMS OR SUITS**.

**c.**    We have no obligation under this insurance to make payments or to perform acts or services except as provided for under **a.** and **b.** above.

**d.**    Damages include prejudgment interest awarded against the insured.

GC 70 21 11 87.

4.34    The Commercial Umbrella Liability Coverage Form of the Subject Policies contain the following relevant definitions:

**SECTION VI – DEFINITIONS**

…

COMPLAINT FOR DECLARATORY RELIEF– 19

**3.**    "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

**8.**    "Injury" means "bodily injury," "property damage," "advertising injury" or "personal injury."

…

**13.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property; or

    **b.**    Loss of use of tangible property that is not physically injured.

…

**15.**    "Underlying insurance" means the liability insurance coverage provided under policies shown in the Declarations, for the limits and periods indicated. It includes any policies issued to replace those policies during the term of this insurance that provide:

    **a.**    At least the same policy limits;

    **b.**    The same hazards insured against, except as modified by general program revisions or as agreed to by us in writing.

GC 70 21 11 87.

4.35    The Commercial Umbrella Liability Coverage Form of the Subject Policies

contain the following exclusion of underlying policies applicable endorsement:

**EXCLUSION OF UNDERLYING POLICIES APPLICABLE**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

The following is added to paragraph **2. Exclusions of COVERAGE B- EXTENDED LIABILITY COVERAGE**

COMPLAINT FOR DECLARATORY RELIEF– 20

**(Section I):**

    **r.**    This insurance does not apply to any "injury" excluded under the insurance shown in the Schedule of Underlying Insurance.

AG0061 (04-93).

    4.36    Hallmark reserves the right to assert any other policy language or policy coverage forms that may be potentially applicable to the claims alleged in the Underlying Lawsuit.

## V.    THERE ARE ACTUAL JUSTICIABLE CONTROVERSIES

    5.1    Hallmark incorporates by reference and re-alleges paragraphs 1.1 through 4.36 above as if full set forth herein.

    5.2    The Subject Policies provide coverage for "bodily injury" or "property damage" caused by an "occurrence."

    5.3    The Subject Policies define "property damage" as physical injury to tangible property, including all resulting loss of use of that property, and/or loss of use of tangible property that is not physical injured.

    5.4    The Subject Policies define "occurrence" as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    5.5    An actual and justiciable controversy exists as to whether the Underlying Lawsuit alleges "property damage," as that term is defined.

    5.6    An actual and justiciable controversy exists as to whether the Underlying Lawsuit alleges "property damage" caused by an "occurrence," as that term is defined.

    5.7    The Subject Policies exclude coverage for "property damage" that is expected or intended from the standpoint of the insured.

5.8    There is an actual and justiciable controversy as to whether the Underlying Lawsuit alleges "property damage" that was either expected or intended by BDZE and/or Edwards.

5.9    The Subject Policies exclude coverage for "property damage" to that particular part of real property on which the insured or any contractors or subcontractors working directly or indirectly on the insured behalf are performing operations, if the property damage arises out of those operations.

5.10   There is an actual and justiciable controversy as to whether the Underlying Lawsuit alleges "property damage" to real property on which BDZE or any contractors or subcontractors working directly or indirectly on BDZE's behalf are performing operations.

5.11   The Subject Policies exclude coverage for "property damage" to that particular part of real property that must be restored, repaired, or replaced because "your (BDZE's) work" was incorrectly performed on it.

5.12   The Subject Policies define "your work" as work or operations performed by the insured or on the insured's behalf, and includes materials, parts or equipment furnished in connection with such work or operations.

5.13   There is an actual and justiciable controversy as to whether the Underlying Lawsuit alleges "property damage" to real property that must be restored, repaired, or replaced because BDZE's work was incorrectly performed on it.

5.14   The Subject Policies exclude coverage for "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

5.15   The Subject Policies define the "products-completed operations hazard" generally as "property damage" that occurs after the property has been put to its intended use or when all

COMPLAINT FOR DECLARATORY RELIEF– 22

the work called for in a contract has been completed.

5.16    There is an actual and justiciable controversy as to whether the Underlying Lawsuit alleges "property damage" to BDZE's work arising out of it and included in the "products-completed operations hazard."

5.17    The Subject Policies exclude "property damage" arising out of "your work" involving the exterior of any "multi-unit residential project" including the construction, maintenance, remodeling or repair, of any new or existing structure. This includes but is not limited to roofing, siding, guttering, caulking, sealing, framing, foundation work, carpentry, door/window repair or installation, and masonry work.

5.18    The Subject Policies defined a "multi-unit residential project" as a condominium, townhouse, apartment, or similar structure, used for the purpose of residential occupancy, which has either more than four units in one building, or more than four buildings with four-units in one development.

5.19    There is an actual and justiciable controversy as to whether the Underlying Lawsuit alleges "property damage" arising out of BDZE's work involving the exterior of any "multi-unit residential project."

5.20    The Subject Policies require that if a claim is made or "suit" is brought against any insured, the insured must immediately record the specifics of the claim or "suit" and notify the insurer as soon as practicable.

5.21    The Subject Policies define "suit" as a civil proceeding in which damages because of "property damage" to which this insurance applies are alleged and includes an arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with the insurer's consent.

COMPLAINT FOR DECLARATORY RELIEF– 23

5.22    There is an actual and justiciable controversy as to whether BDZE and/or Edwards notified Hallmark of the underlying arbitration as soon as practicable.

5.23    The Excess Liability Coverage of the Subject Policies provides coverage for those sums, in excess of the amount payable under the terms of any "underlying insurance," that the insured becomes legally obligated to pay as damages because of "injury" or damage to which this insurance applies, provided that the "underlying insurance" also applies, or would apply but for the exhaustion of its applicable limits of insurance.

5.24    The Excess Liability Coverage of the Subject Policies defines "underlying insurance" as the liability insurance coverage provided under policies shown in the Declarations, for the limits and periods indicated.

5.25    The Excess Liability Coverage of the Subject Policies defines "injury" as "bodily injury," "property damage," "advertising injury" or "personal injury."

5.26    There is an actual and justiciable controversy as to whether the Underlying Lawsuit alleges "injury" to which the "underlying insurance" applies.

5.27    The Extended Liability Coverage of the Commercial Umbrella Liability Occurrence Coverage Form of the Subject Policies provides coverage for those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies. The Extended Liability Coverage applies only to "injury" which occurs during the policy period. The "injury" must be caused by an "occurrence."

5.28    There is an actual and justiciable controversy as to whether the Underlying Lawsuit alleges "injury" caused by an "occurrence."

5.29    The Extended Liability Coverage of the Commercial Umbrella Liability Occurrence Coverage Form of the Subject Policies excludes coverage for any "injury" excluded

COMPLAINT FOR DECLARATORY RELIEF– 24

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 / F: (206) 467-5544

under the insurance shown in the Schedule of Underlying Insurance.

5.30    There is an actual and justiciable controversy as to whether the Underlying Lawsuit alleges "injury" that is excluded under the Subject Policies.

## VI.    CAUSE OF ACTION FOR DECLARATORY RELIEF

6.1    Hallmark reasserts paragraphs 1.1 through 5.30 and incorporates the same by reference as if fully set forth herein.

6.2    Actual and justiciable controversies exist as to the rights and duties of the parties under the Subject Policies.

6.3    Actual and justiciable controversies exist as to whether Hallmark owes any defense obligation to BDZE and/or Edwards for the claims in the Underlying Lawsuit.

6.4    Pursuant to 28 U.S.C §§ 2201 and 2202, Hallmark request that this Court grant declaratory relief in its favor and enter a judicial determination that Hallmark does not have an obligation to provide a defense to BDZE or Edwards under the Subject Policies for the claims asserted against both in the Underlying Lawsuit.

6.5    Actual and justiciable controversies exist as to whether Hallmark owes an indemnity obligation to BDZE and/or Edwards for the claims in the Underlying Lawsuit.

6.6    Pursuant to 28 U.S.C §§ 2201 and 2202, Hallmark request that this Court grant declaratory relief in its favor and enter a judicial determination that Hallmark does not have an obligation to provide any indemnity coverage to BDZE or Edwards under the Subject Policies for the claims asserted against both in the Underlying Lawsuit.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Hallmark, having specifically alleged the foregoing, now requests the following relief:

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 / F: (206) 467-5544

1.      For a declaration of the rights and obligations of the parties under the Subject Policies.

2.      For declaration that Hallmark does not owe BDZE a defense obligation under the Subject Policies for any claims asserted against it in the Underlying Lawsuit.

3.      For declaration that Hallmark does not owe BDZE any indemnity obligation under the Subject Policies for any claims asserted against it in the Underlying Lawsuit.

4.      For declaration that Hallmark does not owe Edwards a defense obligation under the Subject Policies for any claims asserted against it in the Underlying Lawsuit.

5.      For declaration that Hallmark does not owe Edwards any indemnity obligation under the Subject Policies for any claims asserted against it in the Underlying Lawsuit.

6.      For attorney fees and costs allowed by statute and law.

7.      For all interest allowed by law.

8.      For other and further relief as the Court deems just and equitable.


DATED this 11th day of June 2024.

                          LETHER LAW GROUP


                          *s/ Eric J. Neal*
                          Eric J. Neal, OSB No. 110268
                          1848 Westlake Avenue N, Suite 100
                          Seattle, WA 98109
                          P: (206) 467-5444/F: (206) 467-5544
                          eneal@letherlaw.com
                          *Counsel for American Hallmark Insurance Company*

                          LETHER LAW GROUP
                          1848 WESTLAKE AVENUE N, SUITE 100
                          SEATTLE, WA 98109
                          P: (206) 467-5444/F: (206) 467-5544